USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 9, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

FLORIANNE MEREIGH,           :
           :
         Plaintiff,   :
           :
     -v-       :     16-cv-5583 (KBF)
           :
THE NEW YORK AND PRESBYTERIAN  :     OPINION & ORDER
HOSPITAL,         :
           :
         Defendant. :

------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On July 13, 2016, Florianne Mereigh ("plaintiff" or "Mereigh") commenced this employment discrimination action against her former employer, The New York and Presbyterian Hospital ("defendant" or "NYPH").[1] (See Compl., ECF No. 2.) Mereigh's operative complaint alleges, in sum, that NYPH discriminated against her by failing to accommodate her religious beliefs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq., and The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. (See generally Second Amend. Compl. ¶¶ 105-148.)

Before the Court is defendant's motion for summary judgment under Fed. R. Civ. P. 56 ("Rule 56"). (ECF No. 55.) Plaintiff opposed that motion on August 17, 2017 (ECF No. 72), and defendant replied on August 31, 2017 (ECF No. 75).[2]

---

[1] Plaintiff subsequently amended her complaint on August 26, 2016 (Amend. Compl., ECF No. 11), and January 10, 2017 (Second Amend. Compl., ECF No. 35).

[2] On September 25, 2017, plaintiff moved to exclude the Declaration of Jeanette Gonzalez, which was submitted with defendant's reply memorandum, as improper new evidence. (ECF No. 79.) Without ruling on the merits of that motion, which defendant opposed on September 27, 2017 (ECF No. 80),

For the reasons discussed below, the Court hereby GRANTS defendant's motion.

I.      BACKGROUND

The following facts are taken from the parties' respective submissions under Local Civ. R. 56.1, and are undisputed unless otherwise noted.[3]

A.  The Parties

The New York and Presbyterian Hospital ("defendant" or "NYPH") is a not-for-profit corporation that maintains and operates, <u>inter alia</u>, a number of affordable health care centers across New York City.  (Pl.'s Counter Statement of Undisputed and Material Facts of Def. ("Pl.'s 56.1 Resp.") ¶¶ 6, 20, ECF No. 73-1.) The Vanderbilt Clinic, 10th Floor ("VC-10"), is one such facility.  (<u>Id.</u> ¶ 21.)  At all times relevant to this action, VC-10 was divided into four separate "areas": Area A, Area B, Area C, and Area D.  (<u>Id.</u> ¶ 22.)

On July 10, 2000, NYPH hired Florianne Mereigh ("plaintiff" or "Mereigh") as a Registered Nurse.  (<u>Id.</u> ¶ 7.)  Mereigh was promoted to Clinical Nurse III ("CN-III" or "Charge Nurse") in 2006, and was assigned to VC-10 that same year.  (<u>Id.</u> ¶¶ 27-28.)  As the CN-III for VC-10, Mereigh was generally responsible for "providing clinical care to [VC-10] patients", along with a various administrative tasks such as

_____

the Court notes that it did not rely on the disputed declaration in resolving the instant motion for summary judgment.

[3] Pursuant to Local Civ. R. 56.1(c), "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted . . . in the statement required to be served by the opposing party."  There are numerous instances where, although plaintiff "disputes" a fact in form, she does not actually controvert the fact in substance (e.g., where she disputes the justification underlying a negative performance review, but does not deny that she actually received the negative review).  In all such instances, defendant's asserted facts are deemed admitted to the extent they are properly supported.

"making up daily assignments for the nurses, Nursing Attendants, and Medical Assistants."  (Id. ¶¶ 29-30.)  Mereigh worked at VC-10 from 2006 until she left NYPH on or around October 16, 2015.  (Id. ¶ 229.)

B. Mereigh's Job Performance and Resignation

In 2009, Naomi Ramdin ("Ramdin") became the "Practice Administrator" for VC-10.  (Id. ¶ 32.)  In that role, Ramdin was responsible for supervising certain VC-10 clinical programs and staff, including Mereigh.[4]  (Id.)  From 2009-2013, Ramdin raised numerous concerns about Mereigh's job performance, many of which were reflected in Mereigh's annual performance reviews.  Below is a brief summary of the major issues identified:

- In 2009, Ramdin observed that Mereigh was not completing the required number of "discharge calls", and gave her a rating of "Needs Improvement" in the corresponding category of her yearly performance review.  (Decl. of Naomi Ramdin in Support of Def.'s Mot. for Summ. J. ("Ramdin Decl.") Ex. C at 6, ECF No. 57-3.)  Mereigh was also placed on a formal "work improvement plan", which is a tool used by NPYH "to assist employees in specific areas where they are underperforming."  (Pl.'s 56.1 Resp. ¶¶ 48-49.)  Mereigh's 2011, 2012, and 2013 performance reviews also noted a deficiency in this area.  (See Ramdin Decl. Ex. J at 10, Ex. K at 5, Ex. L at 4.)

---

[4] Ramdin was responsible for supervising the "programs administered in Areas A, B, C, and audiology in Area D" of VC-10.  (Id.)  It is undisputed that Ramdin was ultimately responsible for supervising and evaluating Mereigh's job performance.

- Mereigh's 2009 performance review noted that she had "encountered difficulty in working with" various members of the VC-10 staff. (See Ramdin Decl. Ex. C at 3.) Additionally, in 2010, Mereigh received a "Needs Improvement" rating in the categories of "empathy" and "respect", and the review included numerous examples of her allegedly improper behavior.[5] (See Ramdin Decl. Ex. I at 4; Pl.'s 56.1 Resp. ¶ 61.) Moreover, in 2013, Mereigh received a rating of "Needs Improvement" in the "teamwork" category, the review noting that Mereigh "does not respect the NYP procedures for improving upon deficiencies" and "does not fully support the hospital's Patient Satisfaction best practices." (Ramdin Decl. Ex. L at 4.)

- In 2013, Mereigh received a rating of "Needs Improvement" in the "planning" category of her performance review. (See Ramdin Decl. Ex. L at 6.) The review stated that "[w]eakness in planning and organization leads to many weaknesses that appear in Florianne's work performance," such as "delays in preparing staff assignment" and "inexplicable patient flow problems." (Id.)

Ramdin has asserted that in 2014, the "complaints and issues with [Mereigh's] work performance . . . escalated." (Def.'s Statement of Undisputed Facts Pursuant to Local Civ. R. 56.1 ("Def.'s 56.1") ¶ 70, ECF No. 60.) Mereigh does not

---

[5] The 2010 performance review stated, inter alia, that Mereigh: (1) was "[n]ot open or receptive to feedback"; (2) "[r]epeatedly violated chain of command"; (3) "[r]eceived oral counseling and reprimand for lack of respect"; (4) "[d]isplayed insensitivity" by "imitating [the] gait of [a] disabled employee"; and (5) received "[s]everal complaints about public humiliation of [an] employee". (Ramdin Decl. Ex. I at 4.)

specifically controvert that assertion, instead arguing that she "was never given the proper tools" to succeed and that "her performance began to suffer out of retaliatory motive [of] her managers." (Pl.'s 56.1 Resp. ¶ 70.) In any event, it is undisputed that Mereigh received an overall rating of "Does Not Meet Expectations" in 2014 (the "2014 Performance Review"). (Id. ¶ 154; see generally Ramdin Decl. Ex. HH.) The 2014 Performance Review noted that Mereigh had "repeat issues from year to year in the areas of respect for and conformance with the system in place to ensure effective clinic operations", and that "these performance issues have become recurring themes despite Florianne being given constructive feedback and recommendations to help her improve." (Ramdin Decl. Ex. HH at 29.) As a result of the 2014 Performance Review, Mereigh was once again placed on a work improvement plan (the "2015 WIP"). (Pl.'s 56.1 Resp. ¶ 156.)

Pursuant to the applicable Collective Bargaining Agreement ("CBA")[6], "[t]here are certain qualifications that the RN staff must meet in order to be a [CN-III]." (Id. ¶ 164.) One such requirement is that the employee's "current performance must meet or exceed standards." (Id. ¶ 168.) The CBA further provides that "[e]mployees who do not meet the criteria" to remain a CN-III "will return to CN-I title and contractual compensation." (Id. ¶ 163.) All CN-IIIs had to "reapply each year to maintain their status." (Id. ¶ 166.)

As a result of her "Does Not Meet Expectations" rating in 2014, Mereigh was reclassified from CN-III to CN-I in or around April 2015. (Def.'s 56.1 ¶ 170.)

---

[6] At all times relevant to this action, Mereigh was a member of the New York State Nurses Association ("NYSNA" or the "Union"). (Id. ¶ 14.) It is undisputed that as a member of the Union, Mereigh was employed subject to the CBA between the Union and NYPH. (Id. ¶ 15.)

Mereigh does not dispute that she was reclassified, but alleges that "the reclassification was at least partially out of retaliatory motive." (Pl.'s 56.1 Resp. ¶ 170.)

In the summer of 2015, following completion of the 2015 WIP, Mereigh began searching for a new job. (Id. ¶¶ 222-24, 228.) Mereigh received an offer of full-time employment from Monroe College on or around August 17, 2015, and accepted that same day. (Id. ¶¶ 225, 227.) On September 14, 2015, Mereigh resigned from NYPH with an effective date of October 16, 2015. (Id. ¶ 229.) Mereigh stayed out of work on paid time off through October 16, 2015, and began working at Monroe College in the fall of 2015. (Id. ¶¶ 230-31.)

C. Special GYN and Mereigh's Religious Objections

In the summer of 2011, NYPH opened a gynecological clinic known as "Special GYN" in Area D of VC-10. (Id. ¶ 175.) Special GYN provided a variety of services including, inter alia, "family planning services including contraception, care to patients before and after surgical abortions, and certain medication-induced early term abortions." (Id. ¶ 176.) Special GYN had its own dedicated staff, and did not perform any surgical abortion procedures. (Id. ¶¶ 178, 184.)

Mereigh is a self-professed Evangelical Christian. (Second Amend. Compl. ¶ 9.) Beginning in or around June 2011, Mereigh raised a series of religious objections to performing work related to the Special GYN clinic:

- When Special GYN first opened in 2011, Mereigh raised a general objection to performing work in the clinic (the "2011 Accommodation

Request").[7]  It is undisputed that Mereigh was never required to, and never did provide any direct care to any Special GYN patients.  (Pl.'s 56.1 Resp. ¶ 182.)

- In or around spring 2013, NYPH considered requiring VC-10 nurses to administer and provide education regarding contraceptives in Special GYN.  (Id. ¶¶ 185-86.)  Mereigh objected to performing such duties on religious grounds (the "2013 Accommodation Request").  (Id. ¶ 187.)  It is undisputed that Mereigh was never actually required to administer or provide education regarding contraceptives.  (Id. ¶ 188.)

- On August 18, 2014, Mereigh informed Ramdin that Medical Assistants working in Special GYN periodically asked her to answer clinical questions.  (Id. ¶ 189.)  Mereigh requested an exemption from having to answer such questions (the "Question Accommodation Request").  Ramdin subsequently instructed the relevant Medical Assistants to direct all of their clinical questions to physicians, and the Medial Assistants complied. (Id. ¶¶ 190-91.)

On at least two occasions, Mereigh also expressed concern about having to potentially count, order, and/or audit certain abortion-related medications used by the Special GYN clinic:

---

[7] NYPH asserts that Mereigh objected to "working with patients in Special GYN . . . who had, or were preparing to have, abortions", (Def.'s 56.1 ¶ 179), while Mereigh claims that she "requested a complete exemption, not just from direct patient care" (Pl.'s 56.1 Resp. ¶ 179) (emphasis added).  As a result, there is a dispute regarding whether NYPH technically "granted" Mereigh's request in full. As discussed infra, however, such dispute is irrelevant to this Court's resolution of the instant motion for summary judgment.

- During a meeting with Ramdin on August 18, 2014, Mereigh asserted that "a couple of the Special GYN medications related to abortions."[8] (Id. ¶ 195.) Ramdin asserts—and Mereigh does not specifically controvert— that she told Mereigh "other nurses had authority to handle [those] aspects of medication management," and that Mereigh "could assign those responsibilities to others." (Def.'s 56.1 ¶ 196.) Mereigh counters that "[s]he was never dismissed from ultimate accountability in her capacity as the charge nurse" and therefore was "never granted the accommodation." (Pl.'s 56.1 Resp. ¶ 194.)

- On June 2, 2015, Mereigh met with LaToya Anson ("Anson"), a human resources partner at NYPH. (Id. ¶ 202.) During that meeting, Mereigh formally requested "a religious accommodation for the counting of certain abortion-related medications" (the "Medication Accommodation Request"). (Id. ¶ 203.) Anson investigated Mereigh's request, and was informed that Mereigh "did not have to count the Medications herself[,] and that she could assign the counting of the Medications to another nurse." (Def.'s 56.1 ¶ 208.) On that basis, Anson asserts that she granted the Medication Accommodation Request on June 18, 2015. (Id. ¶ 209.) Mereigh disputes that assertion, and claims that the request was not officially granted, and

---

[8] NYPH asserts that Mereigh specifically requested an exemption from counting such medications on that date. (Def.'s 56.1 ¶ 192.) Mereigh counters that she did not "revisit" her request for an accommodation on August 18, 2014, but that the request falls within the scope of her general request for a "complete exemption" in 2013. (Pl.'s 56.1 Resp. ¶ 192.) This apparent dispute is irrelevant to the Court's analysis herein.

that she "continued to email Ms. Anson regarding clarification of their discussions." (Pl.'s 56.1 Resp. ¶ 209)

Accordingly, there is a dispute as to exactly what was communicated to Mereigh, and whether NYPH ever formally or "officially" granted the Medication Accommodation Request. However, it is undisputed that, as Charge Nurse, Mereigh could have assigned the task of counting abortion-related medications to another nurse.[9] (Def.'s 56.1 ¶ 123.)

### D. Procedural History

After resigning in the fall of 2015, Mereigh commenced the instant action against NYPH on July 13, 2016. (See generally Compl.) In her operative complaint, Mereigh alleges, in sum, that: (1) NYPH discriminated against her by failing to accommodate her religious beliefs and/or disciplining her because of those beliefs in violation of Title VII, the NYSHRL, and the NYCHRL (Second Amend. Compl. ¶¶ 105-11, 116-20, 125-28, 129-33, 138-41, 146-48); and (2) NYPH retaliated against her for seeking a religious accommodation in violation of those same statutes (Id. ¶¶ 112-15, 121-24, 134-37, 142-45). NYPH moved for summary judgment on July 17, 2017, arguing that it did not discipline Mereigh because of her religious beliefs and further that it had granted her a reasonable accommodation. (ECF No. 55) Mereigh filed an opposition on August 17, 2017 (ECF No. 72), and NYPH filed its reply on August 31, 2017 (ECF No. 75.)

---

[9] When asked during her deposition whether she could have assigned the task to another nurse, Mereigh responded "I could have, but – but it was my – it was my responsibility and I did not want to impose it on someone else, and that's the reason why I was waiting to get official approval to be exempted before I relinquished all these duties. I was waiting for official approval." (Pl. Dep. at 334:24-335:9, ECF No. 59-7.) Furthermore, when asked whether other people at VC-10 were "capable" and "qualified" to perform the audit, Mereigh responded "Yes . . . The nurse - - the registered nurses could have done that." (Id. at 347:3-9.)

II.  LEGAL PRINCIPLES

A.  Summary Judgment Standard

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the Court construes all evidence in the light most favorable to the nonmoving party, and draws all inferences and resolves all ambiguities in its favor.  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B.  Religious Discrimination

1.  Title VII and NYSHRL

Under both Title VII and the NYSHRL, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" because of that individual's religion.  See 42 U.S.C. § 2000e−2(a)(1).[10]  It is also unlawful for an employer to "limit, segregate, or classify"

---

[10] The Second Circuit has held that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."  Bowles v. New York City Transit Auth., 285 F. App'x 812, 813 (2d Cir. 2008) (citing Torres v. Pisano, 116 F.3d 625, 629 n. 1 (2d Cir.1997)); see also Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (citing Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996) ("New York courts rely on federal law when determining claims under the New York [State] Human Rights Law.")); Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).

an individual in a way that would "adversely affect his [or her] status as an employee" because of that individual's religion.  Id. § 2000e−2(a)(2).  "These two proscriptions [are] often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact provision.'"  E.E.O.C. v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015).

An employer violates the "disparate treatment" provision by, inter alia, taking an "adverse job action" against an employee because of that employee's religion.  See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (citation omitted).  Religion-based disparate treatment claims under both federal and state law are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Mandell v. Cty. of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).  Under that framework, plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination."  Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802).  If plaintiff succeeds in demonstrating a prima facie case, "the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action."  Id.  If the defendant provides such an explanation, the plaintiff bears the burden of proving discrimination by "showing that the employer's proffered reason is pretextual."  Id.

In addition, the Second Circuit has held that "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a <u>reasonable accommodation</u>, unless doing so would cause the employer to suffer an undue hardship." <u>Cosme v. Henderson</u>, 287 F.3d 152, 158 (2d Cir. 2002) (emphasis added). To make a <u>prima facie</u> case of failure to accommodate, plaintiff must show that "(1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employer[] of this belief; and (3) [she was] disciplined for failure to comply with the conflicting employment requirement." <u>Baker v. The Home Depot</u>, 445 F.3d 541, 546 (2d Cir. 2006) (quoting <u>Knight v. Conn. Dep't of Pub. Health</u>, 275 F.3d 156, 167 (2d Cir. 2001). A failure to accommodate claim thus requires that the plaintiff suffer some adverse employment action. <u>Id.</u>; <u>see also Marmulszteyn v. Napolitano</u>, 523 F. App'x 13, 14 (2d Cir. 2013). If plaintiff succeeds in establishing a <u>prima facie</u> case, defendant need only show that they offered a "reasonable accommodation", not necessarily "the accommodation the employee prefers." <u>Cosme</u>, 287 F.3d at 158. A "reasonable accommodation" is one that "eliminate[s] the conflict between the employment requirement . . . and the employee's religious practice." <u>Id.</u> at 159. Where "any reasonable accommodation is provided, the statutory inquiry ends." <u>Id.</u> at 158.

2. NYCHRL

Pursuant to amendments enacted by the New York City Council in the Local Civil Rights Restoration Act of 2005, and in order to effectuate the NYCHRL's

"uniquely broad and remedial purposes," Kaur v. N.Y.C. Health & Hosps. Corp., 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal citations and quotations omitted).

Section 8–107(1)(a) of the NYCHRL makes it unlawful "[f]or any employer or an employee or agent thereof, because of the . . . creed . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). In order to prevail on a religion-based discrimination claim under the NYCHRL, plaintiff must only show that she was treated "less well" than other employees "because of a discriminatory intent." See Mihalik, 715 F.3d at 110 (citation omitted). That being said, the NYCHRL "is not a general civility code", and "[t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Id. (internal quotation omitted).

C. Retaliation

    1. Title VII and NYSHRL

Similar to discrimination claims, religion-based retaliation claims under Title VII and the NYSHRL are analyzed under the burden-shifting framework from

McDonnell Douglas.  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)

(explaining that retaliation claims under Title VII, Section 1981, and NYSHRL are

all "analyzed pursuant to Title VII principles").  Under that framework, plaintiff

bears the initial burden of establishing a prima facie case of retaliation by showing:

(1) "participation in a protected activity"; (2) "the defendant's knowledge of the

protected activity"; (3) "an adverse employment action"; and (4) "a causal connection

between the protected activity and the adverse employment action."  Kwan v.

Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotations omitted).

This showing creates a "presumption of retaliation," which the defendant may rebut

by "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment

action."  Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015) (quoting Jute v.

Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

　　If the defendant provides a "legitimate, non-retaliatory" explanation, "the

presumption of retaliation dissipates," id., and the plaintiff must prove "that the

desire to retaliate was the but-for cause of the challenged employment action."

Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2528 (2013).  "'But-for'

causation does not require proof that retaliation was the only cause of the

employer's action, but only that the adverse action would not have occurred in the

absence of the retaliatory motive."  Kwan, 737 F.3d at 845-46 (citing Nassar, 133

S.Ct. at 2526, 2533).

### 2. NYCHRL

As previously noted, employment discrimination claims under the NYCHRL are to "be evaluated separately from counterpart claims" brought under federal and state law. Kolenovic v. ABM Indus. Inc., 361 Fed. Appx. 246, 248 (2d Cir. 2010); see also Mihalik, 715 F.3d at 109. To "prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Wolf v. Time Warner, Inc., 548 Fed. Appx. 693, 696 (2d Cir. 2013) (quoting Mihalik, 715 F.3d at 112). Although the "but for" causation standard does not apply to retaliation claims under the NYCHRL, see Mihalik, 715 F.3d at 116, a plaintiff still must establish that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive.'" Weber v. City of New York, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting Brightman v. Prison Health Serv., Inc., 970 N.Y.S.2d 789, 792 (2d Dep't 2013)).

## III.  DISCUSSION

For purposes of this decision, Mereigh's claims are separated into two groups: (1) the "discrimination claims" (Counts I, III, V, VI, VIII, and X); and (2) the "retaliation claims" (Counts II, IV, VII, and IX). Each group will be discussed in turn.

A. The Discrimination Claims (Counts I, III, V, VI, VIII, and X)

1. Title VII and NYSHRL

Counts I, III, and V of Mereigh's complaint allege that NYPH discriminated against her on the basis of her religion in violation of Title VII and the NYSHRL.[11] To prevail on those claims, Mereigh must show either that: (1) she suffered an "adverse employment action . . . under conditions giving rise to an inference of discrimination", Demoret, 451 F.3d at 151; or (2) NYPH failed to provide her a "reasonable accommodation" for her religious beliefs, Cosme, 287 F.3d at 158. Mereigh's claims fail on both grounds.

First, there is simply no evidence to suggest that NYPH ever took an "adverse employment action" against Mereigh because of her religious beliefs. On the contrary, the record clearly demonstrates that the negative comments in Mereigh's yearly performance reviews and her eventual reclassification to CN-I were tied directly to her deficient job performance. As described above, Mereigh's supervisors at NYPH identified three major deficiencies with her job performance over time: (1) her failure to complete the required number of "discharge calls" (See, e.g., Ramdin Decl. Ex. C at 6); (2) her troubled relationships with coworkers and lack of "empathy" and "respect" in the workplace (See, e.g., Id. at 3; Ramdin Decl. Ex. I at 4); and (3) her "[w]eakness in planning and organization" (See Ramdin Decl. Ex. L at 6). These deficiencies "escalated" in 2014, and Mereigh concedes that she

---

[11] Count V was brought under New York State Executive Law § 296(6), which makes it unlawful for any person to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." (Second Amend. Compl. ¶¶ 125-28.) Because defendant's liability under Count V is dependent on whether there is a predicate act of discrimination under Counts I and III, the Court does not analyze the theory alleged by Count V separately.

received an overall rating of "Does Not Meet Expectations" that year. (Pl.'s 56.1 Resp. ¶ 154; see also Ramdin Decl. Ex. HH.) Pursuant to the CBA, CN-IIIs need to "meet or exceed standards" in order to remain in that role. (Id. ¶ 168.) Mereigh's reclassification was thus not only appropriate, but required.

Other than the bare allegations in Mereigh's complaint and her unsupported assertion that "her performance began to suffer out of retaliatory motive of her managers"—which is entitled to no deference by this Court—there is nothing to suggest that NYPH rated Mereigh negatively or demoted her because of her religion. In fact, the concerns with Mereigh's job performance predate her initial request for religious accommodation in 2011 (when Special GYN first opened). Accordingly, no reasonable juror could find on this record that Mereigh suffered any "adverse employment action . . . under conditions giving rise to an inference of discrimination." Demoret, 451 F.3d at 151.

Second, it is clear to the Court that NYPH did not discriminate against Mereigh by failing to provide a "reasonable accommodation" for her religious beliefs. As an initial matter, Mereigh's claim fails under this theory for the same reason as stated above—there is no evidence to suggest that NYPH ever took an adverse employment action against Mereigh because of her religious beliefs. As the Second Circuit has held, a failure to accommodate claim requires that the plaintiff suffer some adverse employment action. See Baker, 445 F.3d at 546 (requiring that plaintiff show she "was disciplined for failure to comply with [a] conflicting employment requirement"); see also Marmulszteyn, 523 F. App'x at 14. Because

Mereigh has failed to create a triable issue that any of the negative comments or ratings in her yearly performance reviews or her eventual reclassification to CN-I were tied in any way to religious animus, her failure to accommodate claim fails for that reason alone.

Alternatively, the Court concludes that NYPH provided the requisite "reasonable accommodation" as a matter of law. It is undisputed that Mereigh was never required to provide any direct care to any Special GYN patients. (Pl.'s 56.1 Resp. ¶ 182.) Moreover, it is undisputed that Mereigh was never required to administer or provide education regarding contraceptives in the Special GYN clinic. (Id. ¶ 187.) Finally, it is undisputed that the relevant staff at VC-10 were instructed not to ask Mereigh any clinical questions regarding Special GYN, and that the staff complied with that instruction. (Id. ¶¶ 190-91.) In short, NYPH fully accommodated Mereigh's requests not to participate in those activities, even though she might otherwise have been required to by virtue of her position as CN-III.

The only work that Mereigh alleges she <u>actually did</u> for Special GYN is count, audit, and/or order certain medications used by the clinic. (Id. ¶ 195.) Although Mereigh disputes whether NYPH ever "completely" or "officially" relieved her of her responsibility to perform that task, it is undisputed that she could have delegated the task to another VC-10 nurse, and was under no obligation to <u>personally</u> interact with the medication. (Def.'s 56.1 ¶ 123.) As the Second Circuit has held, employers are obligated to grant a "reasonable accommodation", not necessarily "the accommodation the employee prefers." <u>Cosme</u>, 297 F.3d at 158. Further, a

"reasonable accommodation" is one that "eliminate[s] the conflict between the employment requirement . . . and the employee's religious practice." Id. at 159. Here, it makes no difference that Mereigh alleges she requested a "complete exemption", and that a "complete exemption" was never granted. The record clearly demonstrates that Mereigh was never once <u>required</u> by NYPH to perform a single task that conflicted with her religious beliefs. To the extent Mereigh did in fact perform any such task (e.g., by counting, auditing, and/or ordering Special GYN medications), she did so of her own accord, and because she "did not want to impose it on someone else." (Pl. Dep. at 334:24-335:8.)

Because Mereigh has failed to create a triable issue of material fact that she was subject to discrimination as a result of her religious beliefs under Title VII or the NYSHRL, Counts I, III, and V of her complaint are hereby DISMISSED.

2.  NYCHRL

Count VI, VIII, and X of Mereigh's complaint, which allege that NYPH discriminated against her on the basis of her religion in violation of the NYCHRL, fail for substantially the same reason as outlined above.[12]  Although the standard for proving a religion-based discrimination claim under the NYCHRL is lower, Mereigh still needs to demonstrate that she was treated "less well" than other employees "because of a <u>discriminatory</u> intent." <u>See</u> <u>Mihalik</u>, 715 F.3d at 110 (emphasis added).

---

[12] These claims allege different theories of discrimination: Count VI alleges direct discrimination; Count VIII alleges, in sum, that NYPH "aided and abetted" unlawful discrimination; and Count X alleges NYPH discriminated based on a theory of supervisory liability.  (<u>See</u> Second Amend. Compl. ¶¶ 129-33, 138-41, 146-48.)  Because each theory depends on demonstrating a predicate act of discrimination, the Court does not analyze these theories separately for purposes of this decision.

Because Mereigh has failed to create a triable issue of material fact as to that required nexus, Counts VI, VIII, IX, and X of her complaint are hereby DISMISSED.

B. The Retaliation Claims (Counts II, IV, VII, and IX)

1. Title VII and NYSHRL

Counts II and IV of Mereigh's complaint allege that NYPH retaliated against her for seeking a religious accommodation in violation of Title VII and the NYSHRL. To prevail on those religion-based retaliation claims, Mereigh must demonstrate, inter alia, that there was "a causal connection between the protected activity and the adverse employment action." Kwan, 737 F.3d at 844 (internal quotations omitted). Mereigh's complaint appears to allege that she received negative performance reviews and was demoted to CN-I because she requested a religious accommodation from working in the Special GYN clinic. (See generally Second Amend. Compl.) But, as described above, there is no evidence to suggest that NYPH ever took an adverse employment action against Mereigh because of her accommodation requests. On the contrary, the record demonstrates that Mereigh received negative performance reviews and a job-title reclassification because her supervisors were dissatisfied with her job performance, and that dissatisfaction existed before Mereigh ever requested a religious accommodation. Even assuming arguendo that Mereigh's supervisors harbored some sort of religion-based animus towards her (which, there is no evidence to suggest is true), Mereigh has failed to create a triable issue of fact that they rated her negatively because of that animus.

No reasonable juror could find on this record that NYPH retaliated against Mereigh in any way because of her requests for religious accommodations. Consequently, Counts II and IV of Mereigh's complaint are hereby DISMISSED.

2. NYCHRL

Counts VII and IX of Mereigh's complaint, which allege, in sum, that NYPH retaliated against her for seeking religious accommodations in violation of the NYCHRL, fail for substantially the same reasons as outlined above.[13]  To prevail on a retaliation claim under the NYCHRL, Mereigh must show that NYPH "engaged in conduct that was reasonably likely to deter a person" from engaging in protected activities.  Wolf, 584 Fed. Appx. at 696 (quotation omitted).  Further, Mereigh must show that there was a "causal connection" between the protected activity and the adverse employment action, and that the employer's proffered non-retaliatory reason was "pretextual or 'motivated at least in part by an impermissible motive.'"  Weber, 973 F. Supp. 2d at 273.

As discussed supra, Mereigh has failed to create a triable issue regarding the causal connection between her requests for religious accommodation and anything that might be considered an "adverse employment action" by NYPH.  There is simply no evidence to suggest that any of Mereigh's negative reviews or her job-title reclassification were connected in any way to her requests for religious

---

[13] Though it is referred to as a "discrimination" claim in Mereigh's complaint, Count IX alleges that NYPH "interfere[d] with protected rights."  In sum and substance, Count IX is more akin to a retaliation claim, though the Court would find in any event that the claim must be dismissed for failure to create a triable issue of fact regarding NYPH's alleged discrimination.

accommodation, or that NYPH's proffered reasons for those "adverse actions" (e.g., that her job performance was deficient in various respects) was pretextual.

Accordingly, Counts VII and IX of Mereigh's complaint are hereby DISMISSED.

IV.    CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment at ECF No. 55 is GRANTED in its entirety.  The Clerk of Court is directed to close any open motions and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            November 9, 2017

_____
KATHERINE B. FORREST
United States District Judge